**ORAL ARGUMENT HELD MARCH 25, 2014**
**DECISION ISSUED MAY 13, 2014**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

No. 13-1212

_____

WILDEARTH GUARDIANS,
*Petitioner*,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY, *et al*.,
*Respondents*,

WYOMING MINING ASSOC., et al.,
*Respondent-Intervenors*.

_____

Petition for Review of Final Agency Action of the
United States Environmental Protection Agency

_____

**PETITION FOR REHEARING EN BANC**

_____

Samantha Ruscavage-Barz
WildEarth Guardians
516 Alto St.
Santa Fe, New Mexico 87501
(505) 401-4180
sruscavagebarz@wildearthguardians.org

*Attorney for WildEarth Guardians*

Dated: June 27, 2014

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. iii

STATEMENT OF REASONS FOR REHEARING EN BANC ............................1

INTRODUCTION ......................................................................................3

ARGUMENT ..............................................................................................8

  I.  The Panel Decision Conflicts with Supreme Court Precedent ........................8

  II.  The Panel Decision Presents a Question of Exceptional Importance............14

CONCLUSION ......................................................................................15

# TABLE OF AUTHORITIES

## Cases

*Fund for Animals v. Babbitt*, 903 F. Supp. 96 (D.D.C. 1995)................................14

*\*Massachusetts v. EPA*, 549 U.S. 497 (2007).......1, 3, 5, 7, 8, 10, 11, 12, 13, 14, 15

*Norton v. SUWA*, 542 U.S. 55 (2004)........................................................................7

*NRDC v. Securities and Exchange Com'n*, 606 F.2d 1031 (D.C. Cir. 1979)..........15

*Telecommunications Research and Action Center v. FCC*, 750 F.2d 70
   (D.C. Cir. 1984) ....................................................................................................7

## Statutes

42 U.S.C. § 7411 .......................................................................................................4

*42 U.S.C. § 7411(b)(1)(A) ..........................................................4, 6, 8, 13, 14

42 U.S.C. § 7411(b)(1)(B).........................................................................................5

42 U.S.C. § 7521(a)(1) ...............................................................................................8

5 U.S.C. § 553(e)......................................................................................................15

## Other Authorities

78 Fed. Reg. 26,739 (May 8, 2013).........................................................................3

## Rules

Fed. R. App. P. 35(b)(1)(A) .....................................................................................2

Fed. R. App. P. 35(b)(1)(B)......................................................................................3

## STATEMENT OF REASONS FOR REHEARING EN BANC

Petitioner WildEarth Guardians ("Guardians") hereby seeks *en banc* rehearing of the Court's May 13, 2014 decision denying Guardians' Petition for Review of the U.S. Environmental Protection Agency's (" EPA's") denial of Guardians' rulemaking petition. The panel decision in this case conflicts with a decision of the United States Supreme Court, necessitating consideration by the full Court to secure and maintain uniformity of the Court's decisions with Supreme Court precedent. In addition, the panel decision presents a question of exceptional importance because it provides EPA with unlimited discretion to deny a rulemaking petition, thereby undermining both the right to petition for a rule and the right to judicial review for petition denials.

The panel decision contravenes the Supreme Court's direction in *Massachusetts v. EPA*, 549 U.S. 497, 533 (2007), where the Court held that "once EPA has responded to a petition for rulemaking its reasons for action or inaction must conform to the authorizing statute." The Court also recognized that EPA had significant latitude as to the timing of the rulemaking process once the agency had *initiated* the process, but did not expand the scope of EPA's discretion to deny a petition to include time conflicts with respect to the agency's other rulemaking priorities. *Id*. The panel's decision is not consistent with either of these principles.

First, the panel conflated *Massachusetts*' recognition of EPA's broad discretion to manage the timing of an ongoing rulemaking proceeding with the limited scope of EPA's discretion when forming a scientific judgment in response to a rulemaking petition.  The panel reached this result because it mischaracterized Guardians' challenge to EPA's denial as a dispute over the timing of when EPA would regulate coal mines, rather than a dispute over whether EPA could deny the petition based on being too busy to consider its merits.  Second, the panel found that EPA could deny the petition based on workload and other agency priorities, but based this holding on a misreading of the relevant provision of the Clean Air Act as allowing the agency to decline to make a scientific judgment for these reasons.  The panel misconstrued the limits placed on EPA's discretion by the statute and, instead, read the statute as expanding EPA's discretion to make a scientific judgment beyond what Congress intended.  Therefore, *en banc* review is necessary to maintain conformity with the Supreme Court's decision in *Massachusetts*.  *See* Fed. R. App. P. 35(b)(1)(A).

The panel decision (which is an unwarranted expansion of EPA's discretion to deny a rulemaking petition beyond what the statute allows) threatens to shield from judicial review all petition denials.  The panel's expansion of discretion would allow EPA to evade the statutory standard for reviewing petitions for rulemaking by simply representing that its workload and other priorities preclude it

from actually considering the petition. The panel decision will result in exactly the kind of "roving license to ignore the statutory text" that the Supreme Court sought to prevent in *Massachusetts* when it remanded EPA's petition denial for failure to base the denial on factors contained in the relevant provision of the Clean Air Act. *Massachusetts*, 549 U.S. at 533. Given the potential of the panel's decision to undermine the citizen petitioning process and to shield EPA's petition denials from judicial review, this is clearly an issue of "exceptional importance" requiring *en banc* review. *See* Fed. R. App. P. 35(b)(1)(B).

## INTRODUCTION

Guardians petitioned for review of EPA's final decision entitled "Notice of Final Action on Petition From Earthjustice To List Coal Mines as a Source Category and To Regulate Air Emissions From Coal Mines," 78 Fed. Reg. 26,739 (May 8, 2013). Guardians and other environmental groups petitioned EPA to exercise its authority under Section 111 of the Clean Air Act to: (1) list coal mines as a category of stationary sources that emit air pollution which may reasonably be anticipated to endanger public health or welfare; (2) establish federal standards of performance for new and modified sources within the newly listed stationary source category for coal mines; and (3) establish federal standards of performance

to address methane emissions from existing sources within the newly listed
stationary source category for coal mines.[1]

This rulemaking is necessary because air pollution from coal mining
activities poses myriad negative impacts to public health and the environment.  It is
undisputed that coal mines release air pollution that causes or contributes to the
endangerment of public health and welfare.  The rulemaking petition sought to
spur the development of cost-effective controls to reduce harmful air emissions
from existing and future coal mining.

EPA denied the rulemaking petition citing limited resources and ongoing
budget uncertainties.  Specifically, EPA said that it could not commit to
conducting the process necessary to determine whether coal mines should be added
to the list of source categories under Section 111(b)(1)(A) of the Clean Air Act.  42
U.S.C. § 7411(b)(1)(A).  In so doing, EPA did not deny the petition because
emissions from coal mines could *not* reasonably be anticipated to endanger public
health or welfare (known as an "endangerment finding"), which is the statutory

---

[1] Section 111 of the Clean Air Act directs EPA to establish nationwide uniform
emission standards for new or modified stationary sources of air pollution.  42
U.S.C. § 7411.  Section 111 establishes technology-based emission standards for
industrial source categories, known as new sources performance standards
("NSPS").  NSPS help states attain the standards for criteria air pollutants and also
help prevent new pollution problems from arising from other air pollutants for
which EPA has not designated a standard.  NSPS ensure that emissions control
technologies are built into equipment when a source is constructed or modified,
rather than the more costly process of attempting to retrofit an existing source later
should ambient air quality worsen over time.

standard for determining whether a source should be listed under Section

111(b)(1)(A).  Because EPA declined to determine whether coal mines should be

listed as a source category, and because EPA's duty to set performance standards

would be triggered by listing coal mines as a source category, EPA denied as moot

the requests that the agency set performance standards for new and existing coal

mines under Section 111(b)(1)(B).  42 U.S.C. § 7411(b)(1)(B).

EPA's basis for denying Guardians' petition was not grounded in the Clean

Air Act as required by the U.S. Supreme Court.  In *Massachusetts v. EPA*, 549

U.S. 497, 532 (2007), the Supreme Court held that EPA's reasons for denying a

petition for rulemaking under an analogous provision of the Clean Air Act could

not be "divorced from the statutory text."  The Supreme Court determined that

EPA could permissibly deny the petition only if it determined that greenhouse

gases did not endanger public health or welfare or if the agency provided a

reasonable explanation for why it could not make an endangerment finding.  *Id*. at

533.  The "reasonable explanation" must also be grounded in the relevant statutory

provision of Clean Air Act, and cannot rely on extra-statutory policy judgments.

*Id*. at 534-35.  Here, EPA's bases for denying Guardians' Petition—workload and

other agency priorities—are not grounded in the statute but are outside the limits of

the agency's discretion set by Section 111(b) of the Clean Air Act.  Section 111(b)

states that the EPA Administrator *must* list a source if that source "causes, or

contributes significantly to, air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7411(b)(1)(A).

The panel denied Guardians' petition for review, holding that EPA's reasons for denying the rulemaking petition were consistent with the relevant provision of the Clean Air Act, supported by the record, and the product of reasoned decisionmaking. Op. at 12. The panel provided two bases for its holding, both of which are premised on an erroneous distinction of this case from *Massachusetts v. EPA*.

First, the panel misconstrued the central issue in this case as a dispute over the "timing" of when EPA would provide a substantive response to Guardians' rulemaking petition, rather than recognizing that the dispute was over whether EPA could deny a petition without considering its merits pursuant to Section 111(b)(1)(A). Op. at 9 ("EPA's decision in this case is about timing, not about whether to regulate coal mines."). While also noting that it might, at some unidentified future time consider regulating coal mines, EPA did in fact deny Guardians' petition. Agency denials of rulemaking petitions, even where an agency says it *might* take action at some future time, do not constitute agency *inaction* which would allow a court to consider agency priorities and workloads as

6

legal justification for inaction.[2] Nor does *Massachusetts* stand for the principle that an agency may base its denial of a rulemaking petition on not having the time to form the scientific judgment requested in the petition.

Second, the panel erred in holding that EPA's heavy workload constitutes a "reasonable explanation" for denying the petition. Op. at 10. EPA's discretion to, on its own initiative and timeline, identify new sources for the Section 111(b) list is irrelevant to EPA's reasons for denying a citizen's petition. In reviewing Guardians' petition, EPA is required to exercise its judgment regarding whether air pollution from coal mines endangers public health or welfare. As discussed below, Section 111's "from time to time" language merely indicates Congress did not intend to require EPA to update the list of sources on any specific timeline; however, it does not address the situation where a citizen petition seeks listing of a source. The lack of a statutory timetable for EPA to update the list of sources does not provide a legally valid basis for EPA's denial of a citizen-initiated rulemaking

---

[2] The Supreme Court has clearly distinguished agency inaction from a denial of action: "A 'failure to act' is not the same thing as a 'denial.' The latter is the agency's act of saying no to a request; the former is simply the omission of an action without formally rejecting a request . . . ." *Norton v. SUWA*, 542 U.S. 55, 63 (2004). Where an agency has *failed to act* in responding to a rulemaking petition, the Court considers several factors including "the effect of expediting delayed action on agency activities of a higher or competing priority." *Telecommunications Research and Action Center v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984). Once an agency has acted by denying a rulemaking petition, the basis for the denial "must conform to the authorizing statute." *Massachusetts*, 549 U.S. at 533.

petition asking the agency to make a scientific determination as to whether air pollution from coal mines endangers public health and welfare.

## ARGUMENT

## I.     The Panel Decision Conflicts with Supreme Court Precedent

The panel decision contravenes the Supreme Court's direction in *Massachusetts*, 549 U.S. at 532, where the Court held that EPA's reasons for denying a rulemaking petition under an analogous provision of the Clean Air Act could not be "divorced from the statutory text."  The Supreme Court did not hold that EPA's broad discretion to control the manner, timing, and content of its rulemaking process could be extended to EPA's discretionary judgment as to whether rulemaking is warranted in the first place.  Yet, the panel decision establishes this contrary result.

*Massachusetts* concerned EPA's denial of a rulemaking petition under Section 202 of the Clean Air Act, a provision strikingly parallel to Section 111(b)(1)(A), the basis of Guardians' rulemaking petition.  Compare Section 202:

> The [EPA] Administrator shall by regulation prescribe (and from time to time revise) in accordance with the provisions of this section, standards applicable to the emission of any air pollutant from any class or classes of new motor vehicles or new motor vehicle engines, which in his judgment cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare . . .

42 U.S.C. § 7521(a)(1), with Section 111(b)(1)(A, B):

> The Administrator shall, within 90 days after the date of enactment of the Clean Air Act Amendments of 1970, publish (and from time to time thereafter shall revise) a list of categories of stationary sources. [She] shall include a category of sources in such list if in [her] judgment it causes, or contributes significantly to, air pollution which may reasonably be anticipated to endanger public health or welfare . . . Within one year after the inclusion of a category of stationary source in a list under subparagraph (A), the Administrator shall publish proposed regulations, establishing Federal standards of performance for new sources within such category.

42 U.S.C. § 7411(b)(1)(A, B).  Under both provisions, EPA is required to make an endangerment finding as to impacts of air pollution from motor vehicles and stationary sources respectively.  An "endangerment finding" under Section 202 triggers EPA's duty to promulgate federal regulations to mitigate the problem, in the same manner as an "endangerment finding" under Section 111(b)(1)(A) triggers a duty to establish performance standards.  Once EPA makes a positive endangerment finding under either section, the agency lacks discretion to decide not to regulate those sources.

Although the issue in both *Massachusetts* and the current case was identical, *i.e.*, whether EPA could deny a rulemaking petition for reasons beyond the scope of EPA's statutorily-defined discretion in nearly identical statutory provisions, the panel distinguished the current case from *Massachusetts* on two erroneous grounds: 1) EPA's reasons for denying the rulemaking petitions in each case were different, and 2) EPA's reasons for denying the petition in *Massachusetts* were not

grounded in the statute whereas EPA's reasons for denying the petition in the current case had a statutory basis.  Op. at 9-10.

With respect to the first ground, the panel found significant in *Massachusetts* the fact that EPA had "incorrectly determined that it had no authority to regulate carbon dioxide in motor vehicle emissions" whereas here "EPA has reached no such conclusion with respect to regulating emissions from coal mines."  Op. at 9.  Although not fully explained, the panel believes that "[t]his difference is significant" because *Massachusetts* recognized that where EPA has the authority to regulate it has "significant latitude as to the manner, *timing*, content, and coordination of its regulations. . . ."  *Id*. at 9 (emphasis in original) (quoting *Massachusetts*, 549 U.S. at 533).  This reasoning misses the point because it improperly conflates two separate legal discussions in *Massachusetts*—whether an agency has authority to regulate and whether an agency has discretion to prefer not to regulate.  *Massachusetts* addressed both issues because EPA provided both as reasons for denying the greenhouse gas rulemaking petition.[3]  *Massachusetts*, 549

---

[3] In *Massachusetts*, EPA stated that even if the agency had the authority to regulate, it would be unwise for the agency to regulate greenhouse gases because "a number of voluntary executive branch programs already provide an effective response to the threat of global warming," "regulating greenhouse gases might impair the President's ability to negotiate with key developing nations to reduce emissions," and "curtailing motor-vehicle emissions would reflect an inefficient, piecemeal approach to address the climate change issue."  *Massachusetts*, 549 U.S. at 533 (internal citations omitted).  EPA denied Guardians' petition due to resource limitations and other priorities.  Op. at 6.

U.S. at 532 (characterizing EPA's preference against regulating greenhouse gases using the Clean Air Act as an "alternative basis" for denying the rulemaking petition).  Here, EPA's clear statutory authority to regulate air pollution from coal mines is not at issue, so *Massachusetts'* discussion regarding the scope of EPA's regulatory authority under the Clean Air Act is not relevant.

The part of *Massachusetts* that controls here is the Court's determination that EPA's reasons for denying a rulemaking petition must be grounded in the relevant statute, and that EPA's discretion to determine whether regulation is necessary can only be exercised "within defined statutory limits." *Massachusetts*, 549 U.S. at 533.  Although the panel recognized this principle as controlling in the current case, op. at 10, it erred in distinguishing the current case from *Massachusetts* by asserting that Section 111(b)(1)(A) provides EPA with authority to deny Guardians' petition based on a lack of time and resources to form the requisite scientific judgment as to air pollution from coal mines.

In determining that EPA's basis for denial of Guardians' petition was "consistent with the agency's duties under § 7411" of the Clean Air Act, op. at 10, the panel considered the Supreme Court's statement that EPA could only avoid making an endangerment determination if the agency either found that greenhouse gases did not contribute to climate change or "provides some reasonable explanation as to why it cannot or will not exercise its discretion to determine

11

whether they do." *Massachusetts*, 549 U.S. 533.  The Supreme Court held, however, that the agency's "reasonable explanation" must still be grounded in the relevant statute to be lawful, and did not expand EPA's discretion to exercise its judgment beyond statutory confines.  *Id*. at 535.  EPA's explanation of why it would not actually consider Guardians' petition (timing, competing agency priorities) is not grounded in the statute.

The panel's holding that EPA's denial was consistent with the statute is based on the panel's combining of two unrelated sentences in Section 111(b)(1)(A) that govern two different aspects of EPA's duty for listing new source categories. The panel conflated the first sentence of the provision allowing the Administrator, of her own accord, to revise the list of source categories "from time to time," with the second sentence allowing the Administrator to use her "judgment" to determine whether pollution from a particular source category endangers public health and welfare. Based on this conflation of these two separate provisions, the panel concluded that this language allows EPA to "determin[e] *when* to add a new source to the list of regulated air pollutants."  Op. at 10 (emphasis in original).  However, the "from time to time" language merely indicates Congress did not intend to set a timetable for EPA to update the list of sources on its own initiative; it does not provide discretion to deny a rulemaking petition because the agency is busy.

12

Additionally, the language regarding the Administrator's discretion to use her judgment, when read in context, specifically refers to whether a source category "causes, or contributes significantly to, air pollution which may reasonably be anticipated to endanger public health or welfare."  42 U.S.C. § 7411(b)(1)(A).  Therefore, when Guardians asked EPA to make an endangerment finding as part of its rulemaking petition, once EPA decided to respond to the petition, Section 111(b)(1)(A) required the agency to respond substantively and reach a conclusion on whether air pollution from coal mines endangers public health and welfare.  *See Massachusetts*, 549 U.S. at 533-34.  By conflating two different statutory directives, the panel expanded EPA's discretion beyond what Congress intended and produced a result that conflicts with *Massachusetts*.

Accordingly, the agency's discretion to make this "judgment" regarding endangerment is *limited* by the statutory language defining endangerment rather than *expanded* by language meant merely to avoid strict timetables for EPA's updating of the source list of its own accord.  For a similarly worded Clean Air Act provision in *Massachusetts*, the Supreme Court recognized that EPA's discretion to make an endangerment finding was not unlimited:

> While the statute does condition the exercise of EPA's authority on its formation of a "judgment," 42 U.S.C. § 7521(a)(1), that judgment must relate to whether an air pollutant "cause[s], or contribute[s] to, air pollution which may reasonably be anticipated to endanger public health or welfare." Put another way, the use of the word "judgment" is not a roving license to

13

> ignore the statutory text.  It is but a direction to exercise discretion within
> defined statutory limits.

*Massachusetts*, 549 U.S. at 532-33.  Because the panel did not recognize that

EPA's discretion when deciding the question of endangerment is cabined by the

statutory definition of endangerment, the panel's decision conflicts with Supreme

Court precedent on this issue.

## II.    The Panel Decision Presents a Question of Exceptional Importance

In addition to expanding EPA's discretion beyond what the statute provides

for a judgment as to endangerment as that term is defined in Section 111(b)(1)(A)

of the Clean Air Act, the panel decision also undermines a citizen's right to

petition for rulemaking and a petitioner's right to judicial review of a petition

denial.  By allowing EPA to deny a rulemaking petition based *not* on the

substantive merits of the petition but rather on the agency's lack of time and/or

resources to address the substantive merits, the panel decision denies petitioners

the right to a substantive response.  *See Fund for Animals v. Babbitt*, 903 F. Supp.

96, 115-16 (D.D.C. 1995) (recognizing that "the right to petition for rulemaking

entitles the petitioning party to a response on the merits of the petition.").

The panel decision will also shield EPA from judicial accountability in two

ways.  First, to shield against a challenge in the district court that a petition

decision is unreasonably delayed, the agency can issue a "final decision" that

"defers" consideration of the merits until some potential, but unidentified, later

14

time.  Second, this type of petition denial that defers consideration of the merits would also shield EPA against a Court of Appeals challenge that a petition decision is arbitrary.  If the agency need merely allege that alternative priorities and inadequate time and resources for consideration of the merits require a "deferral" of consideration of the petition, then the agency can avoid meaningful judicial review of its denials/deferrals.

Such results conflict with Congress's intent to give citizens the right to petition for agency rulemaking under the APA.  5 U.S.C. § 553(e), *see also NRDC v. Securities and Exchange Com'n*, 606 F.2d 1031, 1046 n.18 (D.C. Cir. 1979) (acknowledging that "Congress to some extent recognized the value of citizen input when it provided a right to petition for rulemaking in the APA.").  An outcome that shields EPA from judicial accountability also conflicts with the judiciary's recognition of a petitioner's right to judicial review of an agency's denial of a rulemaking petition.  *Massachusetts*, 549 U.S. at 527; *see also Am. Horse Protection Ass'n v. Lyng*, 812 F.2d 1 (D.C. Cir. 1987).

## CONCLUSION

For all of the foregoing reasons, Guardians respectfully requests that the Court grant this petition for rehearing *en banc*.

Respectfully submitted on this 27th day of June, 2014.

/s/ Samantha Ruscavage-Barz
Samantha Ruscavage-Barz
(D.C. Cir. Bar # 54460)
WildEarth Guardians
516 Alto St.
Santa Fe, New Mexico 87501
(505) 401-4180
sruscavagebarz@wildearthguardians.org

*Attorney for Petitioner WildEarth Guardians*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of PETITION FOR REHEARING EN BANC was served on all counsel of record by the Court's ECF system on June 27, 2014.

/s/ Samantha Ruscavage-Barz

# ADDENDUM

## Panel Opinion

## Certificate of Parties

## Disclosure Statement

# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued March 25, 2014        Decided May 13, 2014

No. 13-1212

WILDEARTH GUARDIANS,
PETITIONER

v.

UNITED STATES ENVIRONMENTAL PROTECTION
AGENCY, ET AL.,
RESPONDENTS

NATIONAL MINING ASSOCIATION, ET AL.,
INTERVENORS

———

On Petition for Review of a Final Action of the
United States Environmental Protection Agency

———

*Samantha Ruscavage-Barz* argued the cause and filed the briefs for petitioner. *James J. Tutchton* entered an appearance.

*Kim Smaczniak*, Attorney, Environmental Defense Section, U.S. Department of Justice, argued the cause for respondents. With her on the brief were *Robert G. Dreher*, Acting Assistant Attorney General, Environment and Natural Resources Division, and *Scott Jordan*, Office of General Counsel.

2

*Andrew C. Emrich*, *Emily C. Schilling*, *Peter S. Glaser*, and *Merril J. Hirsh* were on the brief for intervenors National Mining Association, et al. in support of respondents.

Before: GRIFFITH, *Circuit Judge*, and EDWARDS and RANDOLPH, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: On June 16, 2010, Earthjustice, on behalf of WildEarth Guardians ("Guardians") and other environmental groups, petitioned the Environmental Protection Agency ("EPA") to add coal mines to the regulated list of stationary source categories under the Clean Air Act, 42 U.S.C. § 7411(b)(1)(A). The petition sought to have EPA initiate a rulemaking to: "(1) list coal mines as a category of stationary sources that emit air pollution which may reasonably be anticipated to endanger public health or welfare; (2) establish federal standards of performance for new and modified sources within the newly listed stationary source category for coal mines; and (3) establish federal standards of performance to address methane emissions from existing sources within the newly listed stationary source category for coal mines." Pet'rs' Br. at 7. EPA denied the petition on April 30, 2013. *Letter from Bob Perciasepe, Acting Administrator, to Edward B. Zukoski, Staff Attorney, Earthjustice* (Apr. 30, 2013) ("*Letter Denying Petition*"), *reprinted in* Joint Appendix ("J.A.") 40-44. Guardians now seeks review of EPA's action.

In denying the petition for rulemaking, EPA explained that it "must prioritize its actions in light of limited resources and ongoing budget uncertainties, and at this time, cannot commit to conducting the process to determine whether coal

3

mines should be added to the list of categories under" the Clean Air Act. *Notice of Final Action on Petition From Earthjustice To List Coal Mines as a Source Category and To Regulate Air Emissions From Coal Mines*, 78 Fed. Reg. 26,739 (May 8, 2013). EPA made it clear, however, that the denial was not a determination as to whether coal mines should be regulated as sources of air pollutants. *Letter Denying Petition*, J.A. 40. The agency also indicated that it might, in the future, initiate a rulemaking proceeding to address the question raised by Guardians, but it would not do so now. *Id.*

Guardians contends that EPA's reasons for denying the petition for rulemaking do not "conform to the authorizing statute," as required under *Massachusetts v. EPA*, 549 U.S. 497, 533 (2007). We disagree. On the record before us, we find that EPA's action easily passes muster under the "extremely limited" and "highly deferential" standard that governs our review of an agency's denial of a rulemaking petition. *Id.* at 527-28 (quoting *Nat'l Customs Brokers & Forwarders Ass'n of America, Inc. v. United States*, 883 F.2d 93, 96 (D.C. Cir. 1989)). "[A]n agency has broad discretion to choose how best to marshal its limited resources and personnel to carry out its delegated responsibilities," *Massachusetts v. EPA*, 549 U.S. at 527 (citation omitted), which means that EPA has discretion to determine the timing and priorities of its regulatory agenda, *id.* at 533. EPA provided a "reasonable explanation as to why it cannot or will not exercise its discretion" to regulate coal mines at this time. *Id.* at 533. And the reasons given are consistent with the agency's delegated authority and supported by the record. We therefore deny the petition for review.

4

## I.    BACKGROUND

Section 7411 of the Clean Air Act addresses air pollution prevention and control, and sets forth air quality and emissions limitations. Section 7411(b), which is at issue in this case, provides in relevant part that:

(1)(A) The Administrator shall . . . publish (and from time to time thereafter shall revise) a list of categories of stationary sources. He shall include a category of sources in such list if in his judgment it causes, or contributes significantly to, air pollution which may reasonably be anticipated to endanger public health or welfare.

(B) Within one year after the inclusion of a category of stationary sources in a list under subparagraph (A), the Administrator shall publish proposed regulations, establishing Federal standards of performance for new sources within such category. The Administrator shall afford interested persons an opportunity for written comment on such proposed regulations. After considering such comments, he shall promulgate, within one year after such publication, such standards with such modifications as he deems appropriate. The Administrator shall, at least every 8 years, review and, if appropriate, revise such standards following the procedure required by this subsection for promulgation of such standards. Notwithstanding the requirements of the previous sentence, the Administrator need not review any such standard if the Administrator determines that such review is not appropriate in light of readily available information on the efficacy of such standard. Standards of performance or revisions thereof shall become effective upon promulgation.

5

42 U.S.C. § 7411(b)(1)(A), (B).

As noted above, on June 16, 2010, Earthjustice, on behalf of Guardians and other environmental groups, petitioned EPA to add coal mines to the regulated list of stationary source categories under § 7411(b)(1)(A). *Petition for Rulemaking Under the Clean Air Act*, *reprinted in* J.A. 1-27. The petition asserted that coal mines should be regulated under the Clean Air Act because they account for 10.5% of the total methane emissions in the United States. *Id.* at J.A. 5-7. The petition also pointed out that coal mines emit particulate matter, nitrogen oxides, and volatile organic compounds, all pollutants that EPA regulates through National Ambient Air Quality Standards ("NAAQS"). *Id.* at J.A. 10-14. It also asserted that orange nitrogen dioxide clouds have been observed in the areas surrounding mining operations, *id.* at J.A. 15-18, and that the Bureau of Land Management ("BLM") has recognized the danger of nitrogen dioxide emissions from the blasting involved in coal mining, *id.* at J.A. 14.

On December 27, 2010, WildEarth Guardians sent a letter to EPA providing supplemental information in support of the petition for rulemaking. *Letter from Jeremy Nichols, Climate and Energy Program Director, WildEarth Guardians, to Lisa Jackson, EPA Administrator* (Dec. 27, 2010), *reprinted in* J.A. 28-39. This submission offered data showing that coal mines contribute to nitrogen oxide, particulate matter, and ozone levels exceeding NAAQs in the Powder River Basin of southeastern Montana and northeastern Wyoming. *Id.* at 30-37.

In rejecting the petition for rulemaking, EPA made it clear that the denial was "not based on a determination as to whether the emissions from coal mines cause or significantly

6

contribute to air pollution that may reasonably be anticipated to endanger public health and welfare." *Letter Denying Petition*, J.A. 40. Rather, EPA stated that "resource limitations and the necessity of completing court-ordered rulemaking actions have continued to hinder" the agency's effort to determine whether to add coal mines to the regulated list of stationary source categories under § 7411(b)(1)(A). *Id*. at J.A. 42. Specifically, the agency explained that the budget for EPA's Office of Air Quality Planning and Standards was reduced by 12% in real dollars between 2006 and 2013, and its staff levels had also declined. *Id*. In addition, "automatic reductions in federal agency resources . . . h[ad] further reduced the EPA's 2013 budget and h[ad] necessitated significant reductions in a number of regulatory efforts already underway." *Id*. According to EPA, the Office of Air Quality Planning and Standards has 45 nationally applicable stationary source rules due for review or promulgation by September 2014, and it is facing challenges to 15 other recently issued rules. *Id.*

In light of these resource constraints, EPA stated that it was "taking a common-sense, step-by-step approach intended to obtain the most significant greenhouse-gas-emissions reductions through using the most cost-effective measures first." *Id*. at J.A. 43. This means that, in allocating resources available for addressing air pollution, EPA is focusing first on promulgating standards for transportation and electricity systems because these are the largest sources, responsible for more than 60% of the greenhouse gas emissions in the United States in 2011. *Id*. at 43 & n.9. "In contrast to the electricity-generating sector, the coal-mines category represents about 1 percent of total 2011 U.S. greenhouse gas-emissions." *Id.* at 43. The EPA's *Letter Denying Petition* concluded that, "[a]t this point, the agency believes it must address other, higher-priority actions before it can commit to consider whether to

7

list coal mines as a stationary-source category. . . ." *Id.* at J.A. 44. EPA indicated that, "[i]n the future," the agency "may initiate the process for such a determination, but the agency has decided that it will not do so now." *Id.* at J.A. 40.

## II.    ANALYSIS

### A.  Standard of Review

In *Massachusetts v. EPA*, the Court confirmed that review of an agency's denial of a petition for rulemaking is very narrow: "Refusals to promulgate rules are . . . susceptible to judicial review, though such review is extremely limited and highly deferential." 549 U.S. at 527-28 (quotations omitted). The Court's decision is also clear in setting the parameters for review with respect to petitions for rulemaking under the Clean Air Act:

> [O]nce EPA has responded to a petition for rulemaking, its reasons for action or inaction must conform to the authorizing statute. Under the clear terms of the Clean Air Act, EPA can avoid taking further action only if it determines that greenhouse gases do not contribute to climate change *or if it provides some reasonable explanation as to why it cannot or will not exercise its discretion to determine whether they do*. To the extent that this constrains agency discretion to pursue other priorities of the Administrator or the President, this is the congressional design.

*Id.* at 533 (emphasis added) (citations omitted).

In assessing Guardians' petition for review in line with established precedent, we must determine whether EPA exercised discretion pursuant to its delegated authority under

the Clean Air Act. We must also determine whether the agency "adequately explained the facts and policy concerns it relied on and [whether] . . . those facts have some basis in the record." *WWHT, Inc. v. F.C.C.*, 656 F.2d 807, 817 (D.C. Cir. 1981). And, as we have made clear in the past, "[w]e will overturn an agency's decision not to initiate a rulemaking only for compelling cause, such as plain error of law or a fundamental change in the factual premises previously considered by the agency." *Nat'l Customs Brokers & Forwarders Ass'n,* 883 F.2d at 96-97 (citations omitted).

### B. EPA's Reasons for Denying the Petition for Rulemaking are Reasonable, Supported by the Record, and Consistent with the Authorizing Statute.

The Court's decision in *Massachusetts v. EPA* overturned EPA's denial of a petition to regulate new vehicle emissions under the Clean Air Act. 549 U.S. at 534. EPA concluded that it lacked authority to regulate these emissions because, in its view, carbon dioxide is not an "air pollutant" under the Clean Air Act. *Id.* at 528. The Court held that EPA misinterpreted its authorizing statute in reaching this conclusion. *Id.* at 528-29. EPA also reasoned that, even assuming that it had the necessary statutory authority, it would not regulate carbon dioxide because other Executive Branch programs were providing "an effective response to the threat of global warming," regulating new vehicle greenhouse gas emissions might impair the President's ability to negotiate with developing nations, and this would be an "inefficient, piecemeal approach" to addressing climate change. *Id.* at 533 (quotations omitted). The Court held that these "policy judgments" fell short of "a reasoned justification for declining to form a scientific judgment." *Id.* at 533-34.

9

Guardians argues that, "[a]s in *Massachusetts* [*v. EPA*], the agency here justified its failure to make the required scientific and technical determination on policy grounds, with EPA citing its desire to work on other rulemakings that it deems to be a higher priority, and budgetary constraints." Pet'rs' Br. at 33. Guardians thus contends that EPA's action cannot survive review pursuant to the principles enunciated in *Massachusetts v. EPA*. We are not persuaded.

EPA's reasons for denying the petition for rulemaking in this case differ in important respects from the reasons it proffered in *Massachusetts v. EPA*. First, in *Massachusetts v. EPA*, the agency incorrectly determined that it had no authority to regulate carbon dioxide in motor vehicle emissions as an "air pollutant." In this case, EPA has reached no such conclusion with respect to regulating emissions from coal mines. Rather, EPA has made it clear here that the question whether to list coal mines has yet to be decided. This difference is significant because the Court in *Massachusetts v. EPA* recognized that an agency has "significant latitude as to the manner, *timing*, content, and coordination of its regulations. . . ." 549 U.S. at 533 (emphasis added). EPA's decision in this case is about timing, not about whether to regulate coal mines. The agency's statutory authority to regulate is not an issue in this case.

Second, in *Massachusetts v. EPA*, the Court rejected the agency's alternative ground that, even if EPA possessed authority to regulate, it would decline to do so because regulation would conflict with other administration priorities. 549 U.S. at 533-34. As noted above, EPA had argued "that a number of voluntary Executive Branch programs already provide an effective response to the threat of global warming, that regulating greenhouse gases might impair the President's ability to negotiate with 'key developing nations' to reduce

10

emissions, and that curtailing motor-vehicle emissions would reflect 'an inefficient, piecemeal approach to address the climate change issue.'" *Id.* at 533 (citations omitted). The Supreme Court rejected these grounds because "it is evident they have nothing to do with whether greenhouse gas emissions contribute to climate change. Still less do they amount to a reasoned justification for declining to form a scientific judgment." *Id.* at 533-34.

It is noteworthy, however, that the Court in *Massachusetts v. EPA* did not say that EPA was obliged to pursue rulemaking to determine whether greenhouse gas emissions contribute to climate change. Rather, the Court was quite plain in saying that, "[u]nder the clear terms of the Clean Air Act, EPA can avoid taking further action . . . if it provides some reasonable explanation as to why it cannot or will not exercise its discretion to determine whether they do." *Id.* at 533.

In *Massachusetts v. EPA*, the agency's reasons for declining to regulate new vehicle emissions were beyond the scope of its delegated authority. In this case, EPA's reasons for denying the petition for rulemaking are entirely consistent with the agency's duties under § 7411. The statute says that the Administrator shall "from time to time" revise the list of categories of stationary sources of air pollutants. § 7411(b)(1)(A). And, under the terms of the statute, the Administrator is authorized to list a source if "in his judgment it causes, or contributes significantly to, air pollution which may reasonably be anticipated to endanger public health or welfare." *Id.* This language – "from time to time" and "in his judgment" – implies that the Administrator may exercise reasonable discretion in determining *when* to add a new source to the list of regulated air pollutants. In our view, the statute affords agency officials discretion to prioritize sources

11

that are the most significant threats to public health to ensure effective administration of the agency's regulatory agenda.

EPA's decision to focus on more significant sources of air pollutants before addressing coal mines is consistent with the statutory objective of reducing hazardous emissions overall. EPA explained that a greater reduction in emissions will be achieved by focusing on electricity generating sectors, which account for 60% of greenhouse gas emissions, than coal mines, which account for 1%. Diverting resources from regulating the most significant sources of air pollution to regulate less-significant sources might increase overall emissions. This would be contrary to the agency's mandate under § 7411. *See* Br. for Resp't at 19 ("EPA *is* diligently implementing its varied obligations under the relevant statutory provision but cannot, because of resource limitations, undertake immediately the additional regulatory action requested by petitioner without sacrifice to its ongoing, higher-priority activities."); *see also Nat'l Cong. of Hispanic Am. Citizens (El Congreso) v. Marshall*, 626 F.2d 882, 889 (D.C. Cir. 1979) ("With its broader perspective, and access to a broad range of undertakings, and not merely the program before the court, the agency has a better capacity than the court to make the comparative judgments involved in determining priorities and allocating resources.").

This case is similar to *Defenders of Wildlife v. Gutierrez*, 532 F.3d 913 (D.C. Cir. 2008). In that case, the court rejected a challenge to the National Marine Fisheries Service ("NMFS")'s denial of a petition for emergency rulemaking to impose speed restrictions to protect the right whale from boating traffic. NMFS denied the petition for rulemaking on the ground that imposing emergency restrictions would divert resources from, and delay development of, a more comprehensive strategy for protecting the whale population.

12

*Id*. at 920. The agency explained that, "instead of imposing measures in a piecemeal fashion," its comprehensive strategy would be more effective in the long term. *Id*. (quotations omitted).

In upholding the agency's action, the decision in *Defenders of Wildlife* stated that the agency's reason for denying the petition for rulemaking showed it "was well aware of its mandate to protect right whales and was pursuing it by initiating a full notice-and-comment rulemaking on speed restrictions that would potentially be even lower than the ones proposed by petitioners." *Id*. at 921. The decision concluded that the agency's determination "to focus its resources on a comprehensive strategy" was "reasoned and adequately supported by the record." *Id*. Likewise, in this case, we decline to second-guess EPA's decision to prioritize regulatory actions in a way that best achieves the objectives of § 7411.

The reasons supporting EPA's action in this case show that that the agency is diligently implementing § 7411. EPA submitted evidence of its budgetary and staff constraints, explained that it has 45 mandatory rulemakings in progress or under review, and concluded that, in light of these constraints, the best course of action is to prioritize sectors that emit more air pollutants. Guardians apparently believes that, even if EPA has good reasons for prioritizing its regulatory agenda, it cannot do so if this will delay a rulemaking proceeding to list coal mines as a category of stationary sources that emit air pollution. Guardians' postion is contrary to precedent. We find that EPA's action was within the scope of its statutory authority, consistent with the record, and supported by reasoned decisionmaking.   Therefore, pursuant to the extremely limited and highly deferential standard that governs

13

our review of an agency's denial of a rulemaking petition, we deny the petition for review.

### III.   CONCLUSION

For the reasons set forth above, the petition for review is hereby denied.

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA

WILDEARTH GUARDIANS                    )
                                       )
     Petitioner,                      )
                                       )
v.                                     )          Case. No. 13-1212
                                       )
U.S. ENVIRONMENTAL PROTECTION          )
AGENCY and GINA McCARTHY,              )
Administrator of the U.S. EPA,         )
                                       )
     Respondents.                     )

---

## CERTIFICATE AS TO PARTIES, RULINGS,
## AND RELATED CASES

Petitioner WildEarth Guardians, pursuant to D.C. Circuit Rule 28(a)(1),

hereby certifies as follows:

### A.    Parties, Intervenors and Amici Curiae

WildEarth Guardians is the Petitioner.  The U.S. Environmental Protection

Agency and its Administrator, Gina McCarthy, are the Respondents.  Wyoming

Mining Association, National Mining Association, and Peabody Energy

Corporation are the Intervenor-Respondents.  There were no Amici Curiae before

this Court.

**B.     Ruling(s) Under Review**

The agency decision that was the subject of the panel opinion is the final

decision by the Environmental Protection Agency entitled "Notice of Final Action

on Petition From Earthjustice To List Coal Mines as a Source Category and To

Regulate Air Emissions From Coal Mines", EPA Docket Number EPA-HQ-OAR-

2013-0358-001, 78 Fed. Reg. 26,739 (May 8, 2013).

The panel opinion for which Petitioner is requesting rehearing *en banc* is

*WildEarth Guardians v. U.S. Environmental Protection Agency et al.*, No. 13-1212

(May 13, 2014).

**C.     Related Cases**

The agency decision and the panel opinion have not previously been before

this Court or any other court.


Respectfully submitted on this 27th day of June, 2014.

/s/ Samantha Ruscavage-Barz
Samantha Ruscavage-Barz
(D.C. Cir. Bar # 54460)
WildEarth Guardians
516 Alto St.
Santa Fe, New Mexico 87501
(505) 401-4180
sruscavagebarz@wildearthguardians.org

*Attorney for Petitioner WildEarth Guardians*

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA

WILDEARTH GUARDIANS  )
            )
  Petitioner,    )
            )
v.           )   Case. No. 13-1212
            )
U.S. ENVIRONMENTAL PROTECTION )
AGENCY and GINA McCARTHY,  )
Administrator of the U.S. EPA,  )
            )
  Respondents.   )

---

## CORPORATE DISCLOSURE STATEMENT

---

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, the undersigned counsel of record for Petitioner certifies that to the best of her knowledge and belief there are no parent companies, subsidiaries or affiliates of WildEarth Guardians which have any outstanding securities in the hands of the public.

Respectfully submitted on this 27th day of June, 2014.

/s/ Samantha Ruscavage-Barz
Samantha Ruscavage-Barz
(D.C. Cir. Bar # 54460)
WildEarth Guardians
516 Alto St.
Santa Fe, New Mexico 87501
(505) 401-4180
sruscavagebarz@wildearthguardians.org

*Attorney for Petitioner WildEarth Guardians*